Judge Robertson
delivered the opinion of the Court.
This is a bill in chancery, by William and Edward Coleman, as devisees of Henry Coleman, deceased, against the heirs of Richard Barbour, John Hutcherson and James Trabue.
The bill alleges that the testator of the complainants, purchased from Richard Barbour, his claim to 1000 acres of land, and by his will, devised it to them; that the entry of Barbour is special and valid, and superior to that of any opposing claimant; that Hutcherson had obtained, on a vague and illegal entry, a patent for 1000 acres of elder date than Barbour’s, for a part of the land appropriated, by patent, to Barbour, on his said entry; that Trabue, on the like invalid entry, had also obtained a patent prior to Barbour’s,for a part of the same land; that the heirs of Hutcherson and Trabue refused to relinquish their legal titles to the interferences; and that the title acquired by H. Coleman, from R. Barbour, was not complete. There is, therefore, a prayer that the title be perfected by a regular conveyance by Barbour’s heirs, and that the heirs of Hutcherson and Trabue be compelled to surrender their legal titles.
Trabue’s heirs insist that their entry is good, and that Barbour’s is vague and invalid. Hutcherson’s heirs make a similar defence, and also rely on the following facts, which they allege in their answer; filed as a cross bill. That the 100Q acres patented to their ancestor, belonged in equity to him, and to Henry Coleman, the testator, as equal joint tenants; that Hutcherson obtained the patent for it in his own name, for himself and in trust for Coleman; that about twenty years before this suit was commenced, Hutcherson and Coleman divided the land into two equal parcels of 500 acres each, and settled on their respective moieties; that Hutcherson made a deed to Coleman for his part, covenanting, that if the whole *245 or any part of it should ever be lost by a paramount claim, he would indemnify Coleman and make “the loss good.” That, at the same time, Coleman executed a bond (which is exhibited) to Hutcherson, the like reciprocal covenant for indemnifying him for any of the land which he might lose. That Coleman bought the claim of Barbour for $600; and that, therefore, the heirs of Hutcherson ought not to be accountable for more than a proper proportion of the $>600, according to the tenor of the said contracts of indemnity, even if the title of Barbour should be ascertained to be better than that of Hutcherson and Coleman.
The complainants filed separate answers to this cross bill. William does not admit the execution of the bond, although he does not directly deny it; and though, in a part of his answer, he seems to admit that it alludes to the 1000 acres of land patented to Hutcherson, yet he afterwards expresses some doubt about it, and requires proof of the identity. He avers that he made the purchase in his own right, from Barbour, and afterwards sold to his father; that before the sale to his father, he proposed to let Hutch-erson have the benefit of one half of his contract,-by paying one half of the consideration, but that he refused to accede to the proposition.
Edward admits, that the land mentioned in the bond is the same which was patented to Hutcherson and divided between and occupied by him and the testator; but both he and William refuse to admit, that their father, always intended that Hutcherson should have one half of the claim of Barbour, or that he never entered Hutcherson’s half for taxation, or that he platted it out of the survey, which he claimed for himself, all which facts had been charged in the cross bill. They do not, however, produce the commissioner’s books nor their father’s plat; but content themselves with barely saving that they do not know what these would show.
On a final hearing, the circuit court established the entry of Barbour, and decreed that it was superior to those of Hutcherson and Trabue; and also decreed that the heirs of Barbour should convey the legal *246 title to the complainants, and that the heirs of Hutch-ergotl an(j Trabue should release to them.
From this decree a writ of error is prosecuted in the names of all the defendants in the court below.
It will not be necessary to enlarge this opinion by examining the entries and the proof, in relation to them; because the superiority of Barbour’s entry is clearly established, and does not seem to be seriously questioned.
So much of the decree, therefore, as settles this point and directs a conveyance by Barbour’s heirs,, cannot be complained of, and is affirmed.
But we cannot concur with the circuit court in its decree against Hutcherson’s heirs.
The bond of .H. Coleman, is proved to be genuine. We are satisfied that the land, in reference to which it was given, is the identical tract of 1000 acres, patented to Hutcherson, divided between him and Coleman, and now in contest. Then what ought to be the decree on the cross bill?
1st. We are of opinion that Coleman purchased Barbour’s claim for himself and Hutcherson, without any intention to disturb Hutcherson’s possession or title. He brought no suit in his lifetime. There is no evidence, that he complained of Hutcherson, or claimed any right, whatever, to his half of the land.. They lived on the land quietly, and in mutual peace. We take it for granted that Coleman never entered for taxation any part of the claim of Barbour, which interfered with Hutcherson. But if he did not buy Barbour’s claim to quiet the right of Hutcherson,.as well as his own, he ought to have bought it with this and no other view; and without much clearer and stronger opposing facts, than are attempted to be shown in this case, a court of equity would treat the purchase as one made in trust for Hutcherson, to the extent of the interference with his right. Such a construction of the purchase would result from the relation which subsisted between Coleman and Hutch-erson, in regard to the title, the express contracts between them, and the moral, as well as legal, duties and obligations which are incident to this relation and *247 these contracts. It was not proper for Coleman, to do any act hostile to the right of Hutcherson. He ought not, directly or indirectly, to have aided in the subversion of Hutcherson’s title. He could not, sistently with his honor or his engagement, buy any adversary claim, for the purpose of evicting Hutch-erson. He could not oppose any other title to that of Hutcherson and himself.
Warrantor cannot evict jjis superior tnlef either at law pe'sonha*7’ ingnTtitle" warrants, if afíerw.a.rds f^enuresto65 beneht of warrantee,
2d, But if Coleman could, and did in fact, purchase Barbour’s claim for himself alone, intending, if it should be the best, to hold Hutcherson’s moiety of the 1000 acres, divided between them, still the court did not render the proper decree against Hutcher-son’s heirs. They deny that Coleman ever proposed to let their father have half of Barbour’s claim, or demanded of him half of the price given for it. They also deny that their ancestor ever refused or was unwilling to pay one half; and the only proof brought against their answer, is the deposition of one witness, who only states that he heard some conversation between Hutcherson and Coleman, about the land, (he thinks) and it is his impression that Coleman said something about Hutcherson’s paying for half of Barbour’s claim; but of this, he has not a confident recollection. It may be considered then, that there is no proof on this subject.
3d. If Barbour, without selling to Coleman, had brought a suit in chancery and obtained a decree against Hutcherson and Coleman, each would have been bound to indemnify the other for the loss which he would thus have sustained. If the parcels which each would have lost, had been equal in quantity and value, their liabilities to each other would have been equivalent, and, therefore, the one would have neutralized the other. If the losses had been unequal, he who had lost the most would have had a right to demand of the other, half of the excess of the one loss over the other. Suppose, after such a decree in favor of Barbour, he had sold the benefit of his claim to Hutcherson, for $600, would Hutcherson have become equitably entitled to so much of Coleman’s 500 acres, as had been decreed to Barbour? We think not. Because he had covenanted to warrant the title to Coleman, and, therefore, would not only *248 be bound to indemnify him for an eviction by a stranger^ j)u(. wouj¿ not i,e permitted, himself, to evict him, by settingup any title, adverse and superior to that he conveyed to him. The warrantor has no right, in law, to evict his warrantee, much less, therefore, can he have such a right in equity. If, without title, he warrant the title, and afterwards acquire it, it enures to the benefit of the warrantee. So if he have a title, good and perfect in itself, at the time of his warranty, and afterwards buy up an adverse title in a stranger, superior in law or equity, to his own, the new acquisition attaches to the title of his vendee» Having covenanted that the title which he sold, shall ube made good,” whatever right he had' at the date of his covenant, or may afterwards acquire, shall belong to the covenantee.
The spirit of the contracts between Hutcherson and Coleman, is not only a covenant of warranty, but also of quiet enjoyment; and, therefore, on this ground alone, if there were no other, neither will be allowed, in any way or under any title, to disturb the possession or repose of the other. It is still more evident that Hutcherson could not have evicted Coleman, by purchasing Barbour’s claim, before a decree in favor of Barbour. If Hutcherson could not evict Coleman, by a parity of reason, Coleman could not evict Hutcherson. Although Hutcherson conveyed the legal title to Coleman, yet Coleman had an equal interest in the incipient right to the 1000 acres, and retained an equal right in equity, after the emanation of the patent to Hutcherson. The covenant of each is reciprocal and of equal import and effect, at least in a court of chancery. Coleman can never acquire in equity, a right adverse to Hutcherson’s. And consequently, if he shall, from prudential motives, or for purposes of speculation, purchase an adversary claim, which shall be ascertained to be superior to Hutch-erson’s right, he will be considered a trustee for Hutcherson, to the extent of the interference of the acquired title with Hutcherson’s title.
And it is not material whether Hutcherson had refused to contribute to the purchase or not. He was not bound to Coleman to buy up any adverse claim, *249 until It should be ascertained to be paramount to their title. And neither has a right to speculate on the Other.
Coleman gave sixty cents an acre for Barbour’s claim. It has been found to be superior to the title of Hutcherson-. He cannot take from Hutcherson’s heirs any of their 500 acres, which it covers. They are bound to pay him for so much of his 500 acres as may be covered by it. If Barbour had, in his own right, obtained a decree in this case, then the Cole-mans and Hutchersons would have been bound by the contracts of their ancestors-, each to pay to the others one half of the value of the land which he had lost. For as their covenants of warranty were mutual and reciprocal, and as the original title was joint, equity would, in the event of a loss by one of them, of his land, reinstate them, which would be done only by requiring the other to contribute one half of the loss. For if he should pay the whole amount, he would have, virtually, to give up his land, and the whole loss would then fall on him. If the quantity lost by each, had been of equal value, there would have been nothing to pay by either, to the other party. If the values had been different, he whose loss was the least, would have been responsible to the other, for half the difference in value, between their losses. As the Colemans cannot recover the land from the Hutchersons, then what shall they recover? To give a precise answer to this question, is riot very easy. But we are inclined to think that the following would be the measure of justice between the parties. If the land in the possession of either, covered by Barbour’s entry, shall be of greater value than that of the other which shall be covered by it, he whose interference is of the greatest value, shall recover of the other, one half of the excess, at the rate of the cost of Barbour’s claim, for the residuum, after an equalization of the lesser value, by the grantee; for example, value the land of the one and so much of the other as will be equivalent to it, and then, for the surplus of acres remaining, after thus equalizing half of the price given by Coleman for Barbour’s claim, shall be the criterion. As this price was sixty cents *250 an acre< for the whole of Barbour’s 1000 acres, there-f°re) the rl,^e shall be the proportion which the quantity of Hutcherson’s 1000 acres, which is coveted by bears to the whole 1000 acres, of Barbour* which was bought by Coleman. For example, if 500 acres be covered by Barbour, the valuation shall he so much as the 500 acres shall he worth, estimating the whole 1000 acres at $600, and so for any quantity* the same ratio,
Hutcherson’s heirs should then pay to the Cole-mans, according to the same ratio, whatever so much of their land as is covered by Barbour, will amount to; and by the same standard they should contribute for any trouble and expense incurred by Coleman, in negotiating the purchase.
For more explicit exemplification, suppose all the land of both Hutcherson and Coleman, w hich is covered by Barbour, is worth $400, when valued as it should be, in proportion to the cost of the whole 1000 acres of Barbour, which was $600. If the parcels lost by each shall be of equal value, then Hutcherson’s heirs must pay to Coleman’s $200. If the values of the parcels lost shall be unequal, they must be equalized, by exacting from him who lost least, one balf of the excess of the other’s loss over his. For instance, if the land lost by Hutcherson shall, when estimated by the prescribed standard, be worth $210, and that lost by Coleman be w-orlh $190, Colemans must pay the heirs of Hutcherson $10, the one half of $20, the amount of the excess of Hutcherson’s loss over Coleman’s. Then, as they both keep their land, and Coleman paid $400 for it, the heirs must pay what he' paid for the land which they retain, which, in the case supposed, will be $210.
This rule, thus exemplified, will do justice between the parties, according to their contracts, and the principles of equity, whenever it shall be applied to the case as it may be ascertained to be, by an actual survey and valuation of the parcels of land lost by each. It will result in this simple proposition at last, that the heirs of Hutcherson will have to pay to the Cole-mans, one half of what all the land of each covered by Barbour, cost, estimating it bj tue proper ratio of *251 value, proportioned to the cost of the whole 1000 acres, or $600, and a reasonable compensation for the trouble of making the purchase.
Crittenden, for plaintiffs; Wickliffe, for defendants.
On the return of the cause to the circuit court, a commissioner ought to be appointed to ascertain and report the proper compensation for the trouble of making the purchase, and the value of the land which is covered by Barbour’s entry, by the rule which has been fixed; that is, if the 1Ó0Q acres of Barbour be worth $600, and a reasonable amount in addition, for the trouble of making the purchase, (say $b0 for illustration,) what is the quantity held within Barbour’s boundary, worth?
Counsel should notice some irregularities as to the infant parties, which should be corrected.
Decree reversed and cause remanded, for further proceedings, and a final decree consistent with this opinion.